[S.F. No. 22844. In Bank. Feb. 25, 1972.]

HUGH McDERMOTT et al., Petitioners, v.
THE SUPERIOR COURT OF THE CITY AND COUNTY OF
SAN FRANCISCO et al., Respondents;
THE PEOPLE, Real Party in Interest.

## COUNSEL

Edward T. Mancuso, Public Defender, John Kaplan and Robert Bartels for Petitioners.

Evelle J. Younger, Attorney General, Herbert L. Ashby, Chief Assistant Attorney General, Doris H. Maier, Assistant Attorney General, Edward P. O'Brien and Gloria F. DeHart, Deputy Attorneys General, for Respondents and for Real Party in Interest.

## OPINION

**McCOMB, J.**—Petitioners seek a writ of mandate or prohibition ordering that respondents cease requiring that they and the class of persons whom they represent post the 25 percent penalty assessment provided for by section 13521 of the Penal Code in order to obtain their release from custody while awaiting trial.

*Facts:* Two of the petitioners are charged with violating section 11500.5

of the Health and Safety Code. The other four are charged with violating one or more of the following Penal Code sections: 211, 288a, 475a, or 487. Three of the petitioners have posted "bail" and deposited the 25 percent penalty assessment levied under section 13521 of the Penal Code and have been released. The other three have not done so and are still being held in custody.

Question: *Is section 13521 of the Penal Code constitutional as it applies to bail?*

*No.* Article I, section 6, of the California Constitution provides: "All persons shall be bailable by sufficient sureties, unless for capital offenses when the proof is evident or the presumption great. Excessive bail shall not be required . . . ." The Eighth Amendment to the United States Constitution likewise prohibits excessive bail.

Section 1275 of the Penal Code requires that the judge or magistrate take into consideration, in fixing the amount of bail, "the seriousness of the offense charged, the previous criminal record of the defendant, and the probability of his appearing at the trial or hearing of the case."

Under section 13521 of the Penal Code, a 25 percent penalty assessment is levied for every fine, penalty or forfeiture imposed and collected by the courts for certain criminal offenses, including those with which petitioners have been charged. With respect to bail, the section provides: "When any deposit of bail is made for an offense to which this section applies, the person making such deposit *shall also deposit* a sufficient amount to include the assessment prescribed in this section for forfeited bail. If bail is forfeited, the amount of such assessment shall be transmitted by the clerk of the court to the county treasury and thence to the State Treasury pursuant to this section. If bail is returned, the assessment made thereon pursuant to this section shall also be returned." (Italics added.) The section requires that the penalty assessments levied upon fines and upon bail which is subsequently forfeited be deposited in the Peace Officers' Training Fund after being transmitted to the State Treasury.

The purpose of bail is to insure the attendance of the defendant in court and his obedience to the court's orders and judgment, and there should be no suggestion of revenue to the government or punishment of the defendant or his surety. (*In re Newbern,* 55 Cal.2d 500, 504 [4, 5] [11 Cal.Rptr. 547, 360 P.2d 43]; *People* v. *Wilcox,* 53 Cal.2d 651, 656-657 [6] [2 Cal.Rptr. 754, 349 P.2d 522, 78 A.L.R.2d 1174].)

Petitioners logically contend that if bail is set at an amount determined to be reasonable in view of the factors required by section 1275 of the Penal Code to be considered, and a 25 percent penalty assessment is added

to the amount of such bail and the defendant required to deposit the total sum before he can obtain his release from custody, the result would be to exact excessive bail.

Under the record herein, it cannot be determined whether the penalty assessments for the various petitioners were included in the amounts set as reasonable bail for them or were levied in addition thereto. In an exhibit lodged with the court, it is stated: "It is true that some judges set bail at a lower amount than they would if there were no penalty . . . . But many judges in San Francisco do not consider the penalty statute when setting bail." (The San Francisco Committee on Crime, a Report on the Criminal Court of San Francisco, part II (1971) p. 31.)

The plain language of section 13521 of the Penal Code, however, requires, as contended by petitioners, that 25 percent of the amount determined to be reasonable bail be added to the amount of the bail and that the total sum be exacted of a defendant before he is released from custody. ■ Accordingly, we hold that the statute is unconstitutional as it applies to bail, since the result would clearly be, if the statute is followed, to require excessive bail.

It has been suggested that the penalty assessment may be regarded as a fine rather than bail, in accordance with the holding in *Sawyer* v. *Barbour,* 142 Cal.App.2d 827 [300 P.2d 187]. The statute there involved (former Veh. Code, § 773) permitted a penalty assessment on fines or bail in vehicular offenses, and the Court of Appeal determined that the assessment was proper as an additional fine.

Bail for traffic law offenses is, generally, in effect a fine and is employed more for the purpose of punishment and judicial convenience than insuring that the trial process will take place. (See Veh. Code, § 40512.) Consequently, the fact that the penalty assessment for traffic law offenses was held in *Sawyer* to constitute a fine is not controlling here. The bail in *Sawyer* was in the amount of $5 for the offense of failing to stop at a sign-posted crosswalk, and the penalty assessment was in the amount of $1. From the amount of the bail, it is obvious that it was not set for the purpose of insuring the defendant's appearance in court and hence that it was not true bail. In the present case, on the other hand, each of the petitioners was charged with a felony; and unquestionably the purpose of bail in each instance was to insure that the accused would appear in court.

In *People* v. *Norman,* 252 Cal.App.2d 381 [60 Cal.Rptr. 609], bail was set for a defendant charged with burglary, and the penalty assessment required by section 13521 of the Penal Code was "appended as part of his bail." (P. 398.) The Court of Appeal, without much discussion, held,

relying principally upon *Sawyer,* that section 13521 of the Penal Code does not violate the constitutional provision against excessive bail. (Pp. 398-399.) To the extent that *Norman* infers that the penalty assessment may be levied in addition to bail set in an amount determined to be reasonable to insure a defendant's appearance in court, it is disapproved.[1] Any statements in *Sawyer* so inferring are likewise disapproved.

■ It is clear from what we have said, however, that the posting of funds, although described as "bail" and penalties in excess thereof, for purposes *other than* insuring an accused's appearance in court, does not infringe constitutional prohibitions against excessive bail.[2]

We might anticipate that imaginative claimants may seek to recover from the Peace Officers' Training Fund or the transferring agencies those monies initially and illegally levied as excessive bail. Such recoveries, however, would appear to be severely limited. In the first place, the only monies paid into the fund pursuant to Penal Code section 13521 are penalties assessed on fines and on forfeited bail. The penalty assessments on fines do not raise the constitutional issue, as they do not constitute excessive bail. In the typical case, bail and the penalty assessments are forfeited in the absence of a satisfactory explanation therefor, upon a bailee's failure to appear in a criminal proceeding as required. (See *People* v. *United Bonding Ins. Co.* (1971) 5 Cal.3d 898 [98 Cal.Rptr. 57, 489 P.2d 1385].) The bailee is thereafter afforded ample opportunity to appear and excuse his default before the finality of the forfeiture. (Pen. Code, § 1305.) ■ In view of such matters, a bailee who neglected to justify his failure to appear when compelled by bail, with knowledge that not only the proper bail money but also the penalty assessment was at stake, must be deemed to have knowingly elected, for reasons which he believed to be to his greater advantage in his order of priorities, to sacrifice his bail and penalty money rather than appear within the allotted time to explain his continuing absence. Having made that election independently of any lack of knowledge of the illegality of the penalty assessment (cf. *People* v.

---

[1] This court in *In re Harris,* 69 Cal.2d 486, 489 [72 Cal.Rptr. 340, 446 P.2d 148], cited *Norman* in a footnote stating that section 13521 of the Penal Code was constitutional. That issue, however, was not before the court.

[2] The most common instance of the posting of such funds occurs, of course, when one cited for a traffic violation who has remained at liberty on a written promise to appear, thereafter elects to post funds consisting of a scheduled "bail" plus a penalty to be forfeited as a fine upon the citee's election not to appear and defend against the charges. This is not necessarily the sole instance wherein "bail" and penalties in anticipation of forfeiture may properly be imposed. Such penalty assessments with respect to Vehicle Code violations, it should be noted, are made under section 42050 of the Vehicle Code, rather than section 13521 of the Penal Code.

*De Santiago* (1969) 71 Cal.2d 18, 22-28 [76 Cal.Rptr. 809, 453 P.2d 353]), the typical bailee has thereby waived his right to recover the penalty money, and is estopped from repudiating that waiver (see *McCormick* v. *Orient Insurance Co.* (1890) 86 Cal. 260 [24 P. 1003]).[3] In the vast majority if not all cases wherein a penalty assessment has been forfeited with bail, no claim would lie for the recovery thereof.

Let a peremptory writ of mandate issue directing respondent courts to reset petitioners' bail so as to eliminate any penalty assessments which may have been added to the amounts determined to be reasonable bail to insure their appearance in court.

Wright, C. J., Peters, J., Tobriner, J., Mosk, J., Burke, J., and Sullivan, J., concurred.

The petition of the real party in interest for a rehearing was denied March 22, 1972.

---

[3]Waiver is the intentional relinquishment of a known right with knowledge of the facts. (*Roesch* v. *De Mota* (1944) 24 Cal.2d 563 [150 P.2d 422].) The estoppel would be predicated on the bailee's failure to reinstate his bail and penalty assessment resulting in the transfer of the penalty assessment to the Peace Officers' Training Fund where, within the statutory scheme, the funds transferred were utilized and expended for proper objectives. Should that fund now be required to divulge or reimburse those transfers, it would be irreparably injured. The bailee, accordingly, is estopped from repudiating his conduct or omissions which resulted in placing the penalty money at the disposal of the Peace Officers' Training Fund. (See *Altman* v. *McCollum* (1951) 107 Cal.App.2d Supp. 847, 861-863 [236 P.2d 914].)